

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ABBOTT LABORATORIES, ) | |
| ) | |
| Plaintiff, ) | Case No. 05 C 1490 |
| ) | |
| v. ) | District Judge David H. Coar |
| ) | Magistrate Judge Geraldine Soat Brown |
| ANDRX PHARMACEUTICALS, INC. ) | |
| TEVA PHARMACEUTICALS USA, INC., ) | |
| and ROXANE LABORATORIES, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, United States Magistrate Judge

In this patent infringement action, defendant ANDRX Pharmaceuticals, Inc. ("Andrx") moves to compel the production of certain documents withheld as attorney-client privileged by plaintiff Abbott Laboratories ("Abbott"). (Def.'s Mot.) [Dkt 373.] Andrx argues that Abbott waived its attorney-client privilege by disclosing one page of a document that Abbott had initially withheld as attorney-client privileged and by questioning a witness about it. (*Id.* at 2, 7-8.) The page disclosed is the first page of a document referred to by the parties as the "Document 126."[1] Andrx seeks all

---

[1] The entire document is listed as Document 126 on Abbott's privilege log. (Def.'s Mot., Ex. B, Abbott's 11/04/05 Privilege Log at 7.) The document, which has been produced to the court *in camera*, consists of 15 pages total, labeled Bates Nos. 3710-3724. The first page (Bates No. 3710) is a facsimile transmittal letter that attaches 14 pages. The parties refer to the first page as a "transmittal letter" in their briefs, although at Ms. Crampton's deposition, the parties' counsel also referred to it as "Exhibit 801." (*See* Def.'s Mot., Ex. A, Deposition of Sheri Crampton ("Crampton Dep.") at 168.) For consistency's sake, this ruling will refer to the 15-page document as a whole as "Document 126," the first page of the document (Bates No. 3710) as the "transmittal letter," and the remaining 14 pages (Bates Nos. 3711-3724) as the "remaining

documents relating to the drafting of the application of U.S. Patent No. 6,010,718 ("the '718 patent"). (*Id.* at 1, 9.) In the alternative, Andrx requests that Abbott produce the entirety of Document 126. (Def.'s Reply at 6.) [Dkt 377.] For the reasons set forth below, Andrx's motion is granted in part and denied in part.

## BACKGROUND

### I. Introduction

Abbott brought this action against several generic pharmaceutical companies, including Andrx, seeking, among other things, a declaratory judgment of infringement of the '718 patent by the defendants' marketing, sale, and/or distribution of an antibiotic known as BIAXIN® XL, or extended release clarithromycin. (Third Am. Compl. ¶¶ 2-7; 65-72 [dkt 194]); Pl.'s Mot. for Leave to File Surreply, Suppl. Dec. Ted Dane ("Suppl. Dane Dec." ¶ 3) [dkt 382].) The generic companies have asserted the affirmative defense of inequitable conduct against Abbott in connection with Abbott's prosecution of claim 6 of the '718 patent before the United States Patent and Trademark Office ("PTO"). (Def.'s Mot. at 2; Suppl. Dane Dec. ¶ 3.) Claim 6 of the '718 patent relates to a side effect of extended release clarithromycin called "improved taste profile." (*See id.*)

The dispute here arises out of events that occurred at the April 18, 2006 deposition of Sheri Crampton, a former Abbott employee and a named inventor of the '718 patent. (Def.'s Mot. at 3.) Ms. Crampton's job duties at Abbott involved collecting clinical data concerning side effects, and she was the inventor most closely involved with claim 6. (Suppl. Dane Dec. ¶ 3.) However, at her deposition, Ms. Crampton could not recall having reviewed a draft of the '718 patent application.

---

14 pages" or the "14 attached pages."

In addition to being relevant to Andrx's inequitable conduct claim, whether Ms. Crampton reviewed a draft of the application may also be relevant to Andrx's assertion that Abbott violated 37 C.F.R. § 1.63(b)(2), which requires that the inventor declare that he or she "has reviewed and understands the contents of the [patent] application."[2]

As described in more detail below, in an attempt to refresh Ms. Crampton's recollection that she had reviewed such a draft, Abbott's counsel produced the first page of Document 126 and asked Ms. Crampton questions about it and the pages attached to it. All of Document 126 had been listed on Abbott's privilege log as attorney-client privileged and protected work product, and had not previously been produced to counsel for the generic defendants. The deposition was the first time Abbott's counsel had provided copies of the page to defendants' counsel. (Suppl. Dane Dec. ¶ 6; Crampton Dep. at 168.)

The issue is whether, and to what extent, Abbott waived Abbott's attorney-client privilege by producing the transmittal letter and by asking Ms. Crampton questions about it and the 14 attached pages.

## II. Ms. Crampton's Deposition

In response to questioning by Ms. Palmese, counsel for generic defendant Teva Pharmaceuticals USA, Inc. ("Teva"), Ms. Crampton initially testified that she did not recall having reviewed the '718 patent application. (*See id.* at 139-141.) Even after Teva's counsel, Ms. Palmese,

---

[2] Although the parties did not explicitly address 37 C.F.R. § 1.63(b)(2) in the briefs, counsel for Andrx stated during oral argument that the section is relevant to this case.

showed Ms. Crampton portions of the file wrapper[3] for the '718 patent, including the specification for the '718 patent application, and a declaration that bore what Ms. Crampton acknowledged to be her signature or a close approximation of it (*Id.* at 141), Ms. Crampton could not recall having reviewed the '718 patent application (*Id.* 140 – 141; 143.) Ms. Crampton's testimony then continued:

[BY MS. PALMESE:]

Q    Okay. Do you recall that a patent application was filed with respect to the clarithromycin [extended release] formulation?

A    I recall that at one point in my career at Abbott, I was asked to sign off on a patent or something. I don't recall the specifics. And for that, I received remuneration for the company in the amount of one dollar so that technically they had paid me for my interest in that document or application, whatever it was. Which product that was for, what that was, I don't recall.

Q    Okay.

A    It may have been this, I don't recall. I would believe that they would have records of that. And having handed me my dollar, I probably had to sign something. I just don't recall.

Q    Do you recall whether that something included an application that you read?

A    I don't recall.

(*Id.* at 143 – 144.)

On cross-examination, counsel for Abbott, Mr. Dane (who was not representing Ms. Crampton), showed Ms. Crampton the first page of Document 126, *i.e.*, the transmittal letter. (*Id.* 167 – 168.)[4] The transmittal letter is dated April 11, 1997, has an "Abbott Laboratories"

---

[3] "File wrapper" was characterized by the examining attorney at the deposition as "correspondence with the patent office relating to . . . the patent application that ultimately issued as the '718 patent." (Crampton Dep. at 140.)

[4] Before showing the transmittal letter to Ms. Crampton, Mr. Dane made copies of it for the witness and for the generic defendants' counsel. (Suppl. Dane Dec. ¶ 6.)

letterhead, is addressed to "Mona Anand, Counsel, Patent & Trademarks Department," and is from "Sheri Crampton, Assistant Director, Clinical Research." (Bates No. 3710.) The text of the transmittal letter states in its entirety:

> Dear Mona,
>
> Following this cover sheet are 14 of the remaining pages of the draft patent application you asked me to review yesterday afternoon (pages 14 & 16 not sent; no comments). I faxed over the first 6 pages last night.
>
> Please let me know if there is anything you can't read or don't understand.
>
> Thanks for all your help on this.
>
> Kind Regards,
> Sheri

(*Id.*) Notably, the transmittal letter does not specifically refer to the '718 patent or identify which "draft patent application" was reviewed.

Mr. Dane did not show Ms. Crampton the 14 pages attached to the transmittal letter. When Mr. Dane handed Ms. Crampton the transmittal letter, counsel for Andrx complained that it had not previously been produced to the generic defendants, and moved to strike all testimony about the document. (*See id.* at 168.) Mr. Dane responded that "I'm obviously, by producing the document, waiving privilege with regard to this particular memo and there can be questioning about that." (*Id.* at 169.)

After Ms. Crampton reviewed the transmittal letter, Mr. Dane asked Ms. Crampton if she had ever seen it. (*Id.* at 169.) In response, Ms. Crampton testified that she "[did]n't recall having seen [the transmittal letter]. But that does appear to be my signature. So I would have to say I generated it." (*Id.* at 169.)

Mr. Dane then read the text of the transmittal letter aloud to Ms. Crampton and asked her whether she "did, in fact, review the application for the '718 patent." (*Id.* at 169 – 170.) Ms. Crampton responded that she "[did]n't recall having reviewed the document. Although this document would indicate that I did review the document." (*Id.* at 170.)

After another objection by Andrx's counsel, Ms. Crampton stated again that she "[did]n't recall having reviewed it." (*Id.* at 170.) After yet another discussion between the lawyers, the exchange between Mr. Dane and Ms. Crampton continued as follows:

[BY MR. DANE:]

Q    Just so that I'm clear as to your testimony, Ms. Crampton, you're not testifying today that you did not review the application for the '718 patent. Your testimony is that you don't recall whether you did or not, is that correct?

A    That's –

MR. CLEMENT:    Objection. Mischaracterization of testimony.

BY MR. DANE:

Q    Is that correct?

A    I'm not saying that I did not review it. I'm saying that I do not recall having reviewed it.

Q    Does looking at Exhibit 801 [*i.e.*, the transmittal letter] and the reference to not having sent two of the pages because there were no comments, *does that refresh your recollection as to your having made comments as to other pages of the draft patent application?*

MR. CLEMENT:    Objection. Improper calling for refreshing of recollection.

MS. PALMESE:    Objection to form.

THE WITNESS:    If I interpret my own writing, *I would assume that the pages that I did send had comments.* I would not fax pages back that had no comments. It would be a waste of paper and time and resources.

(*Id.* at 171– 172, emphasis added.)

# DISCUSSION

## I. Choice of Law

As an initial matter, because this case involves claims under federal patent laws, the federal common law of privilege, as opposed to state law, governs. Fed. R. Evid. 501; *U.S. v. Zolin*, 491 U.S. 554, 562 (1989). Generally, in patent cases the law of the regional circuit governs with respect to non-patent issues, and Federal Circuit law governs with respect to issues of substantive patent law. *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 803 (Fed. Cir. 2000). This principle applies to issues regarding the discoverability of documents as well. *In re EchoStar Commun. Corp.*, 448 F.3d 1294, 1298 (Fed. Cir. 2006). In this case, the issue is whether privilege was waived by the direct or implicit disclosure of privileged communications. Waiver by disclosure in the context of the present motion does not implicate patent law, and the law of the Seventh Circuit therefore governs. *See GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1272 (Fed. Cir. 2001).[5]

---

[5] Andrx suggests that regional circuit law is applied in patent cases with respect to all attorney-client privilege and waiver issues, citing *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1346 (Fed. Cir. 2005) ("This court applies the law of the regional circuit . . . with respect to questions of attorney-client privilege and waiver of attorney-client privilege."), *cert. denied*, 126 S.Ct. 1768. (*See* Def.'s Mot. at 7) Andrx's argument is an overstatement. It does not appear that the Federal Circuit applies regional circuit law with respect to *all* privilege and waiver issues. Instead, the Federal Circuit has applied its own law when privilege and discovery issues implicate substantive issues of patent law. *See e.g., EchoStar*, 448 F.3d at 1298 (Federal Circuit law applies to issue regarding the scope of waiver in case where defendant asserted advice-of-counsel defense in response to a charge of willful patent infringement); *Spalding Sports*, 203 F.3d at 803-04 (Federal Circuit law applies to the issue of "whether the attorney-client privilege applies to an invention record prepared and submitted to house counsel relating to a litigated patent"); *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1307-08 (Fed. Cir. 2001) (Federal Circuit law applies to the issue of whether negotiations surrounding a settlement agreement were material to claim of inequitable conduct and therefore discoverable). On this motion, however, the only issue to be decided does not implicate substantive patent law, and Seventh Circuit law therefore governs.

## II. Andrx's Waiver Arguments

The purpose of the attorney-client privilege is to "encourage full and frank communication between attorneys and their clients . . . ." *Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981). The attorney-client privilege may, however, be waived, although waivers of the attorney-client privilege are to be narrowly construed. *Beneficial Franchise Co., Inc. v. Bank One, N.A.*, 205 F.R.D. 212, 216 (N.D. Ill. 2001) (citation omitted). Andrx relies on three general principles of law to support its waiver argument: (1) waiver by disclosure; (2) at-issue waiver; and (3) Fed. R. Evid. 106.[6]

### A. Waiver by Disclosure

#### 1. Was there a disclosure of a privileged communication?

Initially, Abbott had listed the entire Document 126 – the transmittal letter as well as the 14 attached pages – as attorney-client privileged and protected work product. (Abbott's 11/04/05 Privilege Log at 7.) Additionally, as recited above, when Mr. Dane produced the transmittal letter at Ms. Crampton's deposition, he stated that he was "waiving privilege with regard to this particular memo . . ." (Crampton Dep. at 169), suggesting that Abbott believed that the transmittal letter was privileged.

Now it appears to be undisputed that the transmittal letter is *not* privileged.[7] It also appears

---

[6] Andrx's motion does not involve the related concepts of inadvertent disclosure or selective disclosure. *See Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1126 (7th Cir. 1997).

[7] Abbott acknowledges that it should not have included the transmittal letter on its privilege log (Pl.'s Opp'n at 9 [dkt 366]), even though Abbott listed the transmittal letter as privileged on both an initial privilege log (Abbott's 11/04/05 Privilege Log at 7) and on an amended privilege log, served just shortly before the Crampton deposition (Pl.'s Mot. for Leave to File Surreply, Ex. C, Abbott's 03/27/06 Privilege Log). While Andrx does not explicitly

-8-

uncontested that the 14 pages attached to the transmittal letter *are* attorney-client privileged. Andrx does not argue that the 14 attached pages are not privileged; indeed, its motion is premised on the argument that the privileged status of the communication in those 14 pages has been waived.

On its privilege log, Abbott also claimed that Document 126 is protected attorney work product. A waiver of the attorney-client privilege does not automatically constitute waiver of work product protection. *See EchoStar*, 448 F.3d at 1300 (Federal Circuit law); *see also Eagle Compressors, Inc. v. HEC Liquidating Corp.*, 206 F.R.D. 474 (N.D. Ill. 2002). Andrx argues that Document 126 is not protected attorney work product. (Def.'s Mot. at 6-7.) Abbott barely responds to that challenge, stating only in a footnote that its assertion of work product protection is not "groundless," as Andrx had argued. (*See* Pl.'s Opp'n at 5 n. 3.) Abbott has made no showing that Document 126 constitutes protected attorney work product.

By failing to provide any support for its claim of work product protection for Document 126, Abbott has waived that claim. Accordingly, this opinion addresses only Abbott's claim of attorney-client privilege, and whether that claim has been waived.

The attorney-client privilege may be waived by a knowing disclosure of privileged communications to a third party. *Beneficial Franchise*, 205 F.R.D. at 216. As it turns out, however, the transmittal letter is not, in fact, privileged. Disclosure of a non-privileged communication

---

concede that the transmittal letter is not privileged, it provides no basis for holding that the letter is privileged, other than observing that Abbott's current assertion that the letter is not privileged "obviously conflicts with the position taken by Mr. Dane at the [Crampton] deposition." (Def.'s Reply at 3.) Andrx cites no case law contradicting that cited by Abbott (Pl.'s Opp'n at 8) holding that similar transmittal letters are not privileged. *Am. Motors Corp. v. Great Am. Surplus Lines Ins. Co.*, No. 87 C 2496, 1988 WL 2788 at *3 (N.D. Ill. Jan. 8, 1988) (Hart, J.); *see also Allen-Bradley Co., Inc. v. Autotech Corp.*, No. 86 C 8514, 1989 WL 134500 at *1 (N.D. Ill. Oct. 11, 1989) (Lefkow, M.J.).

cannot, by definition, waive privilege with respect to privileged communications. *Western United Life Assurance Co. v. Fifth Third Bank*, No. 02 C 7315, 2004 WL 2583916 at *3-4 (N.D. Ill. Nov. 12, 2004) (Nolan, M.J.); *Allen-Bradley*, 1989 WL 134500 at *1.

Abbott, however, did more than merely disclose the transmittal letter. Not only did Mr. Dane question Ms. Crampton about the transmittal letter itself, he also questioned Ms. Crampton about the 14 pages attached to the transmittal letter. He suggested that the attachment to the transmittal letter, which is not expressly identified in the letter, was, in fact, a draft of the '718 patent application, and asked Ms. Crampton whether she made comments on the application, *i.e.*, the '718 patent application. Even after seeing the transmittal letter, Ms. Crampton did not have an independent recollection as to whether the 14 attached pages were part of the draft '718 patent application, or whether they were part of some other patent application. The inference that the remaining 14 pages were a draft of the '718 patent application arose from Mr. Dane's questioning, *not* from Ms. Crampton's memory. Through his questioning, he suggested the content of the remaining 14 pages, namely that the pages constituted a draft of the '718 application, with Ms. Crampton's comments on some pages of that application. Mr. Dane's questioning of Ms. Crampton was based on his knowledge of the substance of what was attached to the transmittal letter. That was a knowing disclosure of a communication that Abbott contends is privileged. The remaining issue is the consequence of that disclosure.

### 2. Potential consequences of knowing disclosure

A knowing disclosure of a privileged communication can have a number of consequences. One possible result is a subject matter waiver, that is, a waiver with respect to all other

-10-

communications relating to the same subject matter as the disclosed communication. *Fort James*, 412 F.3d at 1349 (applying Seventh Circuit law and citing *In re Continental Ill. Secs. Litig.*, 732 F.2d 1302, 1314 n. 18 (7th Cir. 1984)). Andrx initially argues that Abbott waived its attorney-client privilege with respect to all documents relating to the drafting of the '718 application.

Whether a voluntary disclosure constitutes a subject matter waiver depends on the facts and circumstances of each case, as well as on considerations of fairness and prejudice to the parties. *Fort James*, 412 F.3d at 1349-1350; *see also Graco Children's Prods., Inc. v. Dressler, Goldsmith, Shore, & Milnamow, Ltd.*, No. 95 C 1303, 1995 WL 360590 at *8 (N.D. Ill. 1995) (Anderson, J.) ("Courts should, consistent with principles of fundamental fairness, fashion their orders compelling document production on a case by case basis."); *In re Keeper of the Records XYZ Corp.*, 348 F.3d 16, 22-23, 24 (1st Cir. 2003) (noting that evaluating claim of waiver "demands a fastidious sifting of the facts and a careful weighing of the circumstances" and that subject matter waivers "are almost invariably premised on fairness concerns"). Fairness requires the court to consider the risk that a limited disclosure of privileged communications, if permitted, might result in a party's use of privileged communications supporting its position and simultaneous concealment of communications that do not. *Fort James*, 412 F.3d at 1349. In evaluating a claim of subject matter waiver, the court may, but is not required to, consider whether the disclosure was made to give a party a tactical advantage in the course of litigation. *Graco Children's Prods.*, 1995 WL 360590 at *8; *see also In re von Bulow*, 828 F.2d 94, 101 (2d Cir. 1987) (finding no subject matter waiver where disclosures were made in book authored by attorney and were not made in context of gaining advantage in course of litigation).

Alternatively, a knowing disclosure of a privileged communication may be a "partial" waiver,

"where disclosure of a part of a privileged document or set of such documents is argued to waive privilege in the rest of it." *Dellwood Farms*, 128 F.3d at 1127 (citing *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1423 n. 7 (3d Cir. 1991)). Like subject matter waiver, "[t]he rationale underlying partial waiver is that a party should not be able to gain a tactical advantage by disclosing favorable portions of privileged documents and withholding unfavorable portions." *U.S. v. South Chicago Bank*, No. 97 CR 849-1, 97 CR 849-2, 1998 WL 774001 at *3 (N.D. Ill. Oct. 30, 1998) (Zagel, J.) (holding that disclosure of some of a set of notes containing privileged communications to third parties waived privilege with respect to the remainder of the notes); *see also R.J. Hereley & Son Co. v. Stotler & Co.*, 87 F.R.D. 358, 359 (N.D. Ill. 1980) (holding that the entirety of a privileged memorandum should be produced to defendant where, at a settlement conference, plaintiff's attorney had read portions of the memorandum aloud, had handed it to one of the defendant's representatives for perusal, and had used it to "refresh [the attorney's] recollection")).

In sum, whether a knowing disclosure will result in a subject matter waiver or a waiver limited to the balance of the communication depends upon the particular facts of each case and on underlying considerations of fairness.

### 3. Abbott's disclosure resulted in a waiver as to the attached 14 pages.

Abbott's disclosure of the contents of the attached 14 pages was a partial waiver requiring production of those pages. This result is consistent with the primary policy behind the waiver doctrine as it arises in all contexts: fairness. *See R.J. Reynolds Tobacco Co. v. Premium Tobacco Stores, Inc.*, No. 99 C 1174, 2001 WL 1286727 at *6 (N.D. Ill. Oct. 24, 2001) (Kocoras, J.) (fairness

is "overriding issue" in deciding whether inadvertent disclosure warrants finding privilege has been waived); *Thermos Co. v. Starbucks Corp.*, No. 96 C 3833, 1998 WL 781120 at *1 (N.D. Ill. Nov. 3, 1998) (Kocoras, J.) ("Principles of fairness support the waiver of the attorney-client or work product privileges where a party relies upon the advice of counsel defense."); *In re von Bulow*, 828 F.2d at 101 (noting that fairness considerations in deciding implied waiver issue "aim to prevent prejudice to a party and distortion of the judicial process that may be caused by the privilege-holder's selective disclosure during litigation of otherwise privileged information."); *see also* Paul R. Rice, *Attorney-Client Privilege in the United States*, vol. 2, § 9:50, 222-24 (2d ed., West 1999) (noting that, in determining scope of waiver when attorney-client communications are put at-issue, "[t]he standard . . . is fairness—fairness to the privilege holder, to the rationale and policy underlying the privilege, and to the opposing party") (citing cases).

By creating the inference that the pages attached to the transmittal letter constituted a draft of the '718 application, Abbott was attempting to gain a tactical advantage in the course of this litigation, which is what the waiver doctrine is meant to avoid. Both parties acknowledge that whether Ms. Crampton reviewed the patent application is relevant to Abbott's defense against Andrx's inequitable conduct claim and Andrx's assertion that Abbott violated 37 C.F.R. § 1.63(b)(2). After reading the transmittal letter, which does not refer to the '718 patent, Mr. Dane suggested that the draft application attached was the '718 patent application. Ms. Crampton then acknowledged that, although she had no independent recollection, the document "would indicate" that she reviewed and made comments on whatever document was attached to the note. (Crampton Dep. at 170; 172.) It would be unfair if Andrx were not allowed to review the remaining 14 pages of Document 126 to test the validity of Mr. Dane's suggestion that the document Ms. Crampton

-13-

reviewed was a draft of the '718 patent application.

Abbott argues that the questioning of Ms. Crampton did no more than disclose information that appeared on the privilege log itself (date, recipient, author, description). That is not correct. On Abbott's Privilege Log, Abbott described Document 126 as: "Facsimile providing information for the purpose of aiding attorney in rendering legal advice regarding draft patent application." (Abbott's 11/04/05 Privilege Log at 7; Abbott's 03/27/06 Privilege Log at 9.) The transmittal letter discloses much more information than does the privilege log. Mr. Dane chose to show Ms. Crampton the transmittal letter rather than the privilege log (as Abbott acknowledges had apparently been the practice at other inventor depositions). (Pl.'s Opp'n at 7-8.) But, most importantly, the transmittal letter alone did not refresh Ms. Crampton's recollection of that she reviewed the '718 patent. Her testimony, limited as it was, linking the transmittal letter to the '718 patent came only as a result of Mr. Dane's suggestion that the attachment to the transmittal letter was a draft of the '718 patent.

However, Andrx has not established that Abbott's disclosure constituted a subject matter waiver as to all communications relating to the '718 application. Although Andrx argued for subject matter waiver its moving brief, it appears to have abandoned that argument in its reply. (*See* Def.'s Reply at 3-6.) Moreover, this is not the type of situation in which subject matter waiver is typically found. The tactical advantage gained by Abbott was limited to the questioning of one inventor regarding one specific document. Requiring subject matter waiver in these circumstances would be inconsistent with both fairness considerations and with the policy to construe the scope of a waiver narrowly.

## B. At-Issue Waiver

Andrx also argues that Abbott has waived any privilege with respect to the remainder of Document 126 because Abbott placed Document 126 "at issue." (Def.'s Reply at 3-6.) At-issue waiver occurs when the privilege holder "asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney-client communication." *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994) (cited with approval in *Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1175 n. 1 (7th Cir. 1995)). At-issue waiver may occur, for example, when a party defends against the claim of willful patent infringement by asserting that it relied on advice of counsel, and thus was not acting willfully. *See Beneficial Franchise*, 205 F.R.D. at 216 (citing cases). By asserting that defense, a party directly puts at issue the substance of its counsel's advice.

> [At-issue] waiver extends beyond the particular opinions or communications that the party chooses to disclose. Having opened the door to certain privileged information in an effort to advance its cause, as a matter of fairness a party must disclose other privileged materials involving the subject matter of the disclosed communications.

*Id.* at 217. To waive attorney-client privilege by an at-issue waiver, the privilege holder must inject a factual or legal issue into case. *Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1098 (7th Cir. 1987) (citing cases).

The principle of at-issue waiver does not apply to the present motion. Abbott did not insert a new issue into the case by its disclosure of the transmittal letter and its questioning of Ms. Crampton.

## C. Fed. R. Evid. 106

Andrx also cites Fed. R. Evid. 106 to support its argument that Abbott should produce the

entirety of Document 126. (Def.'s Reply at 6-7.) That Rule provides: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Rule 106, which is based on the common-law doctrine of completeness, allows "a party against whom a fragmentary statement is introduced [to] demand that any other part of the statement be admitted as would be necessary to clarify or explain the portion already received . . ." *U.S. v. Glover*, 101 F.3d 1183, 1189 (7th Cir. 1996). Underlying Rule 106 is the general principle of fairness: its purpose is "to avoid any misleading impression that would be created by offering the statement outside its true context." *Id.*; *see also U.S. v. Sweiss*, 814 F.2d 1208, 1211-12 (7th Cir. 1987) ("Under the doctrine of completeness, another writing or tape recording is required to be read or heard if it is necessary to (1) explain the admitted portion, (2) place the admitted portion in context, (3) avoid misleading the trier of fact, or (4) insure a fair and impartial understanding." (internal quotations and citations omitted)).

Rule 106, of course, is a evidentiary rule, not a rule relating to pretrial discovery. It is not necessary on the present motion to decide whether Rule 106 might have implications for discoverability, because similar concepts of fairness underlie the principle, discussed above, that waiver of privilege as to part of a communication is a waiver as to the balance of the communication.

### D. Andrx's Assertions that Abbott Has Abused, and Continues to Abuse, the Attorney-Client Privilege

Andrx asserts in its reply that Abbott has abused and continues to abuse the attorney-client privilege. (Def.'s Reply at 7-10.) Those arguments, asserted in a reply brief, are not properly before

the court and will not be addressed. Any claims of alleged discovery abuse should be brought in a separate motion, for example, on a motion under Fed. R. Civ. P. 37, with the certification required by Local Rule 37.2.

## CONCLUSION

For all the foregoing reasons, Andrx's motion to compel is granted as to the remaining 14 pages of Document 126, which must be produced by Abbott to Andrx within seven days of this order, and is denied in all other respects.

**SO ORDERED.**

/GERALDINE SOAT BROWN
United States Magistrate Judge

July 25, 2006

